IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DON ALLEN DEBIAS, JR.,          :     CIVIL ACTION
                                :     NO. 11-3545
        Plaintiff,              :
                                :
        v.                      :
                                :
MICHAEL J. ASTRUE,              :
                                :
        Defendant.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JUNE 11, 2012

## I.    INTRODUCTION

        Plaintiff Don Allen Debias, Jr. ("Plaintiff") filed
this action pursuant to 42 U.S.C. § 405(g) seeking judicial
review of the Commissioner of the Social Security
Administration's ("Commissioner") final decision denying his
application for Disability Insurance Benefits under Title II of
the Social Security Act.  After considering the Administrative
Record, submitted pleadings, Chief Magistrate Judge Carol Sandra
Moore Wells's Report and Recommendation, and objections thereto,
the Court approves and adopts the Report and Recommendation in
part and rejects it in part.  Plaintiff's request for review is

granted in part, denied in part, and the Court remands this case to the Commissioner for further proceedings.

## II.  BACKGROUND

Plaintiff was born on June 17, 1966.  R. at 100.[1]  He was forty-two years old at the time of his alleged on-set of disability — March 28, 2008.  Id.  He graduated high school and previously worked as a customer service representative, customer service manager, national sales manager, sales and marketing representative, case worker, warehouse manager, and flagman.  R. at 35, 40-41, 105-06.  Plaintiff lives at home with his wife, sixteen-year-old son, eighteen-year-old step-son, and twenty-one-year-old step-daughter.  R. at 28-29, 130.  Plaintiff alleges he is disabled due to the following conditions: bipolar disorder, anxiety disorder, and personality disorder.  Pl.'s Br. & Statement of Issues in Supp. of His Request for Review 3, ECF No. 9 [hereinafter Pl.'s Br.].

Plaintiff applied for Social Security Disability Insurance Benefits ("DIB") on October 9, 2008, alleging disability since March 28, 2008.  R. at 87-90, 100.  On January 29, 2009, the Commissioner denied his benefits claim.  Plaintiff

_____

[1]      All citations herein are to the Administrative Record.  See ECF No. 5.

2

requested an administrative hearing.  R. at 46-51.  On March 31,
2010, Administrative Law Judge ("ALJ") George Yatron held a
hearing.  At that hearing, ALJ Yatron heard Plaintiff's
testimony and also heard testimony from a vocational expert
("VE").  Plaintiff gave detailed testimony about himself, his
daily activities, his past work experience, and his claimed
disabilities.  See R. at 33-40.  The VE gave testimony regarding
Plaintiff's past work experience.  R. at 40-41.  In addition,
ALJ Yatron also posed a hypothetical to the VE.  ALJ Yatron
asked the VE to consider whether a hypothetical individual of
Plaintiff's age, training, education, work experience, who was
generally unimpaired exertionally, but could not perform work
that required detailed instructions, could perform any of
Plaintiff's previous jobs or some other work in the national and
regional economy.  R. at 41.  The VE responded that Plaintiff
could perform his past work as a flagman.  Id.  The VE also
opined that Plaintiff could perform the following other work
available in the national and regional economy: kitchen helper,
packer, and cleaner.  Id.

On April 20, 2010, ALJ Yatron issued his decision and
found that Plaintiff had "the following severe impairments: a
mixed bipolar disorder, an anxiety disorder, and a personality
disorder."  R. at 18.  ALJ Yatron found that Plaintiff had

3

medically determinable impairments that imposed mild restrictions on Plaintiff's activities of daily living and mild restrictions on Plaintiff's ability to maintain concentration, persistence, or pace.  R. at 19-20.[2]  ALJ Yatron also found that Plaintiff's impairments imposed moderate difficulties in his ability to maintain social functioning.  R. at 19.

In ruling that Plaintiff was not disabled, ALJ Yatron gave little weight to opinions from Plaintiff's treating physician, Dr. John Lychak, which were dated December 9, 2009, and March 22, 2010.  ALJ Yatron gave controlling weight to the opinion from the state agency's non-examining physician, Dr. Thomas Fink, which was dated January 2009[3] regarding Plaintiff's mental limitations and ability to work.  R. at 23.  In the end, ALJ Yatron made the following findings:

> 3.    [Plaintiff] has the following severe impairments: a mixed bipolar disorder, an anxiety disorder, and a personality disorder (20 CFR 404.1520(c)).

---

[2]    ALJs use the following five-point scale when rating the degree of impairment: "None, mild, moderate, marked, and extreme."  Evaluation of Mental Impairments, 20 C.F.R. § 404.1520a(c)(4) (2012).

[3]    Dr. Fink's January 2009 opinion is consistent with Dr. Lychak's initial December 2008 opinion evaluating Plaintiff's conditions.  Indeed, Dr. Fink indicates in his opinion that he adopts Dr. Lychak's initial December 2008 opinion.  R. at 208.

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform a full range of light work at all exertional levels but with the following nonexertional limitations: He cannot perform work activity involving detailed instructions.

6.  [Plaintiff] is capable of performing past relevant work as a flagman. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity (20 CFR 404.1565).

7.  [Plaintiff] has not been under a disability, as defined in the Social Security Act, from March 28, 2008, through the date of this decision (20 CFR 404.1520(f)).

R. at 18-25. Plaintiff requested that the Appeals Council review ALJ Yatron's decision. The Appeals Council denied Plaintiff's request.

On June 2, 2011, Plaintiff filed a complaint seeking review in this Court. ECF No. 1. The Court, pursuant to Local Rule of Civil Procedure 72.1, and 28 U.S.C. § 636(b)(1)(B), referred the matter to Chief Magistrate Judge Carol Sandra Moore Wells for a Report and Recommendation ("R&R"). See ECF No. 11. On April 19, 2012, Judge Wells issued her R&R recommending this Court grant Plaintiff's request for review in part, deny it in

part, and remand to the Commissioner for further proceedings.
Briefly, Judge Wells held that ALJ Yatron posed an incomplete
hypothetical to the VE.  Judge Wells also held that ALJ Yatron
improperly gave the reports of Plaintiff's treating physician
little weight.  Finally, Judge Wells held that ALJ Yatron
properly found Plaintiff's own testimony not credible.  The
Commissioner filed objections to Judge Wells's R&R.  ECF No. 14.
Plaintiff responded to the Commissioner's objections.  ECF No.
15.  The matter is now ripe for disposition.


**III. STANDARD OF REVIEW**

        The Court undertakes a <u>de novo</u> review of the portions
of the R&R to which the Commissioner has objected.  <u>See</u> 28
U.S.C. § 636(b)(1) (2006); <u>Cont'l Cas. Co. v. Dominick D'Andrea,
Inc.</u>, 150 F.3d 245, 250 (3d Cir. 1998).  The Court "may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge."  28 U.S.C. §
636(b)(1).

        In reviewing the Commissioner's final determination
that a person is not disabled[4] and, therefore, not entitled to

--------

[4]        A claimant is "disabled" if he or she is unable to
engage in "any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be

Social Security benefits, the Court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ.  See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).  Instead, the Court must review the factual findings presented in order to determine whether they are supported by substantial evidence.  See 42 U.S.C. § 405(g) (2006); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence constitutes that which a "reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (internal quotation marks omitted).  "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)).  If substantial evidence supports the ALJ's decision, the Court may not set it aside even if the Court would have

---

expected to last for a continuous period of not less than 12 months." Basic Definition of Disability for Adults, 20 C.F.R. § 416.905 (2012); Basic Definition of Disability, 20 C.F.R. § 404.1505 (2012).

Once the claimant satisfies her burden by showing an inability to return to her past relevant work, the burden shifts to the Commissioner to show the claimant (given her age, education, and work experience) has the ability to perform specific jobs existing in the economy. Evaluation of Disability of Adults, in General, 20 C.F.R. §§ 416.920; see Rutherford v. Barnhart, 399 F.3d at 551, 546 (3d Cir. 2005).

decided the factual inquiry differently.  See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see also Rutherford, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992))).

Because Judge Wells properly outlined the standards for establishing a disability under the Social Security Act and summarized the five-step sequential process for evaluating disability claims, the Court will not duplicate these efforts here.  See Santiago v. Barnhart, 367 F. Supp. 2d 728, 732 (E.D. Pa. 2005) (Robreno, J.) (outlining standards and five-step sequential process for evaluating disability claims).

## IV.  DISCUSSION

The Commissioner has two objections to Judge Wells's R&R.  One, the Commissioner argues that the ALJ posed a complete and legally sufficient hypothetical question to the VE.  Two, the ALJ reasonably evaluated the opinions regarding disability and residual functional capacity that Plaintiff's treating

physician provided to Plaintiff's attorney.  The Court will address each in turn.[5]

A.   Whether the ALJ Posed an Incomplete Hypothetical

ALJ Yatron relied upon the VE's response to a hypothetical in order to assess whether Plaintiff could perform any of his past work or whether there were jobs available in the national and regional economy that Plaintiff could perform.  ALJ Yatron presented the following hypothetical to the VE:

> I would like you to consider hypothetically an individual 43 years of age with training, education and experience as in the present case who is generally unimpaired exertionally [but with] nonexertional limitations.  No detailed instructions.  Given those facts and circumstances, is there any work the hypothetical individual could perform on a sustained basis?

R. at 41.

When an ALJ poses a hypothetical to a VE, it must accurately convey the claimant's physical and mental impairments.  Burns, 312 F.3d at 123.  The ALJ "must include all of a claimant's impairments" in the hypothetical.  Ramirez v.

---

[5]     Neither party objected to Judge Wells's conclusion that ALJ Yatron properly rejected Plaintiff's testimony as not credible.  See R&R 15-16.  Moreover, Plaintiff does not object to Judge Wells's recommendation that remand to the Commissioner is appropriate rather than reversal.  See R&R 16-17.  Accordingly, the Court adopts both of these recommendations.

Barnhart, 372 F.3d 546, 552 (3d Cir. 2004).  Pertinent here, the
ALJ must "specifically convey" a claimant's limitations during
the hypothetical.  Burns, 312 F.3d at 123.  If the hypothetical
does not, then substantial evidence does not support the ALJ's
decision.  Ramirez, 372 F.3d at 552.

   Judge Wells held that ALJ Yatron posed an incomplete
hypothetical to the VE.  Judge Wells explained that ALJ Yatron
found that Plaintiff had a moderate impairment in social
functioning.  ALJ Yatron's hypothetical to the VE, however, only
provided the limitation that Plaintiff be given "no detailed
instructions" in his job.  R. at 41.  Judge Wells held that "no
detailed instructions" did not accurately convey Plaintiff's
impairment in social function.  "Instead, the hypothetical
precludes detailed work instructions, a limitation often used
with claimants who have a deficiency in concentration,
persistence or pace."  R&R 9.

   The Commissioner objects and argues that Judge Wells
incorrectly concluded that the hypothetical was inaccurate.  In
particular, the Commissioner argues that the VE interpreted "no
detailed instructions" within ALJ Yatron's hypothetical to mean
"unskilled work."  The Commissioner argues that unskilled work
involves "dealing with objects, rather than with data or
people."  Def.'s Objections 5 (citing SSR 85-15, 1985 WL 56857,

at *4 (1985)), ECF No. 14.  Therefore, the Commissioner argues, ALJ Yatron reasonably accounted for Plaintiff's moderate social function impairment because Plaintiff would only deal with objects, rather than people.

The Commissioner's argument is unavailing.  What the VE might or might not have interpreted ALJ Yatron's hypothetical to mean is not relevant.  There is no evidence of record that the VE knew, nor did ALJ Yatron inform the VE, that "unskilled" work would equate with a moderate social function impairment.  A hypothetical must specifically convey a claimant's impairment.  Burns, 312 F.3d at 123.  In this case, ALJ Yatron's hypothetical did not meet this standard.  A "no detailed instructions" limitation is a common limitation when a claimant has a concentration, persistence, or pace impairment, not when a claimant has a social function impairment.  See Ramirez, 372 F.3d at 552-56; see also McDonald v. Astrue, 293 F. App'x 941, 946 (3d Cir. 2008) (holding that no detailed instructions limitation may adequately encompass mild difficulty with concentration, persistence, or pace in VE hypothetical).

Indeed, the two impairments — concentration, persistence, or pace, and social function — are inherently different and might limit a claimant's ability to work in different ways.  For example, in finding that Plaintiff had a

moderate social function impairment, ALJ Yatron cited to
Plaintiff's testimony that he has panic attacks every day, and
that Plaintiff's home is his safety zone.  R. at 19.  Moreover,
although Plaintiff is close to his family, he must isolate
himself for fifteen to twenty minutes each day because he cannot
deal with a crowd or talking.  Id.  The Court fails to see how
"no detailed instructions" accounts for the impairments in
social function described above.  Therefore, ALJ Yatron's
hypothetical did not accurately convey all of Plaintiff's mental
impairments with specificity.

          This case is similar to Weinsteiger v. Astrue, No. 09-
1769, 2010 WL 331903 (E.D. Pa. Jan. 25, 2010).  Weinsteiger
involved the plaintiff's claim for disability and social
security benefits.  In that case, the ALJ found that the
plaintiff had a moderate social function impairment, as well as
a moderate concentration, persistence, or pace impairment.  Id.
at *9.  The ALJ posed the following hypothetical to the
vocational expert in that case:

> Let's assume an individual of 48, with a limited
> education, and Claimant's past work, and let's assume
> that she is limited to sedentary work that is simple,
> repetitive work and low stress.  Could she return to
> any of her past work?

Id. at *5.  The court in Weinsteiger held that the ALJ's
inclusion of "simple repetitive work" was not specific enough to

12

address the plaintiff's moderate concentration, persistence, or
pace impairment.  Id. at *10.  The court further held that the
ALJ's hypothetical failed to even consider the plaintiff's
moderate social function impairment.  Id. at *11.  Accordingly,
the court remanded that case to allow the ALJ to pose an
adequate hypothetical to the VE.  In this case, similar to
Weinsteiger, ALJ Yatron did not even address Plaintiff's social
function impairment.  Any attempt to shoehorn a "no detailed
instructions" limitation into a social function impairment is
unavailing and fails the Third Circuit's requirement for great
specificity of a claimant's impairments in VE hypotheticals.
See Ramirez, 372 F.3d at 554.

      The Commissioner argues that Weinsteiger is
distinguishable.  Principally, the Commissioner argues that
Weinsteiger relied heavily upon the Third Circuit case of
Ramirez.  In turn, changes to the regulations governing the
Psychiatric Review Technique Form ("PRTF") undermined Ramirez's
reasoning.  The court in Ramirez held that a hypothetical posed
to a VE limiting the claimant to simple one or two step tasks
was not specific enough to encompass the ALJ's finding that the
claimant often had deficiencies in concentration, persistence,
or pace.  Id. at 554.  Ramirez stressed the importance that an
ALJ's hypothetical include all of a claimant's impairments and

13

that the hypothetical have "great specificity" as to those impairments.  Id.  The Commissioner contends that the PRTF in effect in Ramirez defined impairments by their frequency — that is, "never, seldom, often, frequent, [or] constant."  Ramirez, 372 F.3d at 551.  Due to a regulatory change, in this case impairments are defined by degree — that is, "none, mild, moderate, marked, [or] extreme."  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  Therefore, the Commissioner argues that because of this regulatory change, Ramirez does not support Plaintiff's argument that ALJ Yatron's hypothetical lacked the required specificity.

This definition change is of no moment in this case. Whether there is a difference between functional impairments defined by degree or frequency is, perhaps, debatable.  Compare McDonald, 293 F. App'x at 946 n.10 (distinguishing Ramirez on grounds that ALJ held in Ramirez plaintiff often had functional limitation, but in that case ALJ concluded plaintiff had moderate functional limitation), with Colon v. Barnhart, 424 F. Supp. 2d 805, 811 (E.D. Pa. 2006) (equating "often" with "moderate").  Here, like Weinsteiger, there was simply no mention of Plaintiff's moderate social function impairment in ALJ Yatron's hypothetical posed to the VE and no indication that the VE understood the "no detailed instructions" limitation to

14

mean as much.  Therefore, the hypothetical was not sufficiently specific to accurately convey all of Plaintiff's impairments.

ALJ Yatron's incomplete hypothetical resulted in the VE's opinion about Plaintiff's ability to work as a flagman, kitchen helper, packer, and cleaner.  In turn, the VE's opinion was inherently flawed because the hypothetical did not accurately convey all of Plaintiff's impairments.  See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Therefore, because ALJ Yatron relied upon the VE's inherently flawed opinion when deciding that Plaintiff was not disabled, substantial evidence did not support ALJ Yatron's decision.  See Chrupcala v. Heckler, 829 F.3d 1269, 1276 (3d Cir. 1987). Accordingly, the Court will remand the case to the Commissioner so the ALJ can provide an accurate hypothetical that includes Plaintiff's moderate social function impairment.

B.      Whether the ALJ Improperly Rejected Plaintiff's
        Medical Evidence

ALJ Yatron gave little weight to reports from Plaintiff's treating physician, Dr. Lychak, dated December 9, 2009, and March 22, 2010,[6] preferring to give controlling weight

---

[6]      To be sure, ALJ Yatron did consider Dr. Lychak's December 9, 2009, and March 22, 2010, medical opinions and seemed to give them controlling weight in deciding if

to the state agency's medical report from January 2009.  Judge Wells held that ALJ Yatron erred in not giving Dr. Lychak's reports greater weight.  The Commissioner objects and argues that ALJ Yatron properly discounted both of Dr. Lychak's opinions in favor of the state agency's medical report.

Generally, the opinion of a treating physician is given great weight because that physician is familiar with a claimant and has had an opportunity to examine a claimant.  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).  Opinions of non-examining physicians, such as a state agency physician, are also reviewed and accorded weight.  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2012).  If "[t]he opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429).  "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating

Plaintiff had a medically determinable impairment that was "severe" or a combination of impairments that was "severe."  20 C.F.R. § 404.1520(c); see R. at 18.  ALJ Yatron's rejection of these opinions was during his determination of Plaintiff's residual functional capacity.

physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion."   Id. (quoting Plummer, 186 F.3d at 429).  With this standard in mind, the Court considers ALJ Yatron's rejections of Dr. Lychak's medical opinions dated December 9, 2009, and March 22, 2010.

1.   <u>ALJ's Consideration of Dr. Lychak's December 9, 2009 Opinion</u>

ALJ Yatron gave little weight to the opinions of Plaintiff's treating psychiatrist, Dr. John Lychak.  ALJ Yatron instead gave the Mental Residual Functional Capacity Assessment of Dr. Thomas Fink, a non-examining state agency psychologist, controlling weight.  In rejecting Dr. Lychak's December 9, 2009, opinion, ALJ Yatron explained that this opinion was "not consistent" with Dr. Lychak's December 2008 report in as much as that report concluded that Plaintiff's disability was not so advanced.  R. at 22.  Dr. Lychak's December 9, 2009, report, however, concluded that Plaintiff's condition had deteriorated since his first report in December 2008 to the point that Plaintiff could not work.  ALJ Yatron noted that any worsening of Plaintiff's condition was due to Plaintiff's incarceration in 2009.

Judge Wells held that ALJ Yatron erred in discounting the weight given to Dr. Lychak's December 9, 2009, opinion. Judge Wells reasoned that Dr. Fink's January 2009, opinion was not based upon the full record and, therefore, ALJ Yatron should not have given Dr. Fink's report controlling weight. The Commissioner objects to Judge Wells's conclusion and argues that ALJ Yatron's rejection of Dr. Lychak's December 9, 2009, opinion was correct.

On the record before it, the Court agrees that the case should be remanded, but for a different reason. What is apparent on its face is that the record in this case is incomplete for the Court to make any reasoned review of ALJ Yatron's decision to give Dr. Lychak's December 9, 2009, opinion little weight.

First, ALJ Yatron's decision fails to adequately explain why Dr. Lychak's opinion was "not consistent" with his December 2008 opinion. If ALJ Yatron meant that Dr. Lychak's treatment notes were the same for the December 2008 and December 2009 reports, but Dr. Lychak came to a different conclusion — rather than the treatment notes supported that Plaintiff's condition deteriorated — then the Court might agree with ALJ Yatron. Unfortunately, there is no way for the Court to reach any such conclusion because Dr. Lychak's treatment notes are

18

largely, if not completely, illegible.  ALJ Yatron had a duty to ensure that the administrative record was fully developed, but failed to do so.  See Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995).  Therefore, under the record before the Court, it cannot determine whether Dr. Lychak's opinion was "not consistent."  See Johnson v. Barnhart, 66 F. App'x 285, 288-89 (3d Cir. 2003) (holding that ALJ's finding that report was "inconsistent" with other medical evidence insufficient given "his duty to explain why he credited certain medical evidence but not other medical evidence").

Second, ALJ Yatron had authority to request a further explanation of this inconsistent medical report from Dr. Lychak. Evidence, 20 C.F.R. § 404.1512(e)(1) (2010).  ALJ Yatron also had authority to order a new state agency medical report when new medical evidence might change the findings of the state agency consultant.  See SSR 96-6P, 1996 WL 374180, at *4 (1996). ALJ Yatron had broad discretionary authority in deciding to invoke either or both of the above remedial actions, but by declining to do either in this case, he failed to adequately develop the administrative record.  Cf. Griffies v. Astrue, No. 10-546, --- F. Supp. 2d ----, 2012 WL 1242302, at *16 (D. Del. Apr. 11, 2012) (remanding to Commissioner after ALJ failed to properly consider treating physician's three years' worth of

19

reports filed after state agency's medical report); <u>Smoot v. Comm'n of Soc. Sec.</u>, No. 07-15008, 2009 WL 230219, at *12 (E.D. Mich. Jan. 30, 2009) (remanding to Commissioner after ALJ failed to give sufficient reasons for discounting opinion of treating physician in favor of outdated report from state agency physician).

Accordingly, the Court will remand the case back to the Commissioner to fully develop the record with respect to Dr. Lychak's December 9, 2009, opinion.  The ALJ should obtain legible treatment notes from Dr. Lychak and then fully explain why he is able to conclude that Dr. Lychak's December 9, 2009, opinion was "not consistent" with his December 2008 opinion.[7] And, if warranted, upon consideration of the legible treatment notes, the ALJ should procure a supplemental state agency report in light of Dr. Lychak's December 9, 2009, opinion that purports to show Plaintiff's deteriorating mental impairments.[8]

---

[7]     Should the ALJ conclude that Dr. Lychak's opinion must be discounted as inconsistent, the ALJ is advised to follow the guidance set forth in 20 C.F.R. 416.927(c)(1)-(6) (2012), which outlines the factors to consider when weighing a medical opinions.

[8]     Given that the record has not been fully developed, the Court does not reach the issue or express any opinion as to what weight, if any, to give Dr. Lychak's December 9, 2009, opinion.  This task is assigned to the ALJ in the first instance.

2.   ALJ's Consideration of Dr. Lychak's March 22,
     2010 Opinion

ALJ Yatron also dismissed Dr. Lychak's March 22, 2010,

opinion.  Dr. Lychak's March 22, 2010, opinion concluded that

Plaintiff was "markedly limited" in a majority of the functional

areas assessed.  R. at 268-70.  Dr. Lychak's opinion also

indicated that Plaintiff's lowest GAF[9] score for the year was 45-

50, and his current GAF score was 55-60.  R. at 265.  Given this

information, ALJ Yatron found that Dr. Lychak's March 22, 2010,

opinion was internally inconsistent.  ALJ Yatron reasoned that a

GAF score of 51-60 corresponds to moderate symptoms or moderate

difficultly in functioning, but that Dr. Lychak found Plaintiff

exhibited marked impairments in a majority of functional areas.

Put another way, on the one hand Dr. Lychak indicated that

Plaintiff only had moderate functional difficulty according to

his GAF score.  But, on the other hand, Dr. Lychak indicated

Plaintiff demonstrated markedly limited function.  Therefore,

ALJ Yatron found Dr. Lychak's opinion internally inconsistent

and gave it little weight.

---

[9]      A GAF score is "the clinician's judgment of the
individual's overall level of functioning."  Am.
Psychiatric Ass'n, Diagnostic and Statistical Manual of
Mental Disorders 32 (4th Ed. 2000).

Judge Wells concluded that ALJ Yatron erred in dismissing Dr. Lychak's March 22, 2010, opinion. Judge Wells reasoned that ALJ Yatron's reasoning was flawed, and that he made a "speculative inference that a finding of 'markedly limited' would correspond with a GAF score lower than 55." R&R 14. Therefore, Judge Wells concluded, ALJ Yatron improperly rejected Dr. Lychak's opinion based upon his own perceived expertise.

The Commissioner objects and argues Judge Wells incorrectly concluded that ALJ Yatron relied upon his own perceived expertise. The Commissioner argues that ALJ Yatron relied upon the specific definitions of the Diagnostic and Statistical Manual of Mental Disorders when making his decision that Dr. Lychak's report was internally inconsistent. Specifically, ALJ Yatron relied upon the definition that a GAF score ranging from 51-60 was evidence of "'moderate difficulty in social, occupational, or school functioning.'" Def.'s Objections 8 (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000)). Therefore, ALJ Yatron noted that Dr. Lychak's opinion that Plaintiff exhibited marked impairments directly conflicted with Dr. Lychak's assignment of a GAF score of 55-60, which corresponds to only moderate impairments.

22

With respect to Dr. Lychak's March 22, 2010, opinion, the Court disagrees with Judge Wells's conclusion that ALJ Yatron improperly gave this medical evidence little weight.  ALJ Yatron was not relying on his own expertise in mental assessment, but noting that the definitions of GAF showed a contradiction between Dr. Lychak's opinion that Plaintiff exhibited a majority of marked impairments and his GAF assessment that Plaintiff was in the upper range of a moderate impairment.  While, generally, controlling or heavy weight is given to a treating physician's opinion, when such an opinion is internally inconsistent, an ALJ may properly give that opinion less weight or no weight.  See Money v. Barnhart, 91 F. App'x 210, 213 (3d Cir. 2004) ("[T]he ALJ found that the opinions of Money's treating physicians were both internally inconsistent and inconsistent with other medical evidence.  As a result, their opinions were not entitled to controlling weight.  Because they were not entitled to such weight, the ALJ could evaluate and weigh them against other medical evidence in the record." (citing 20 C.F.R. §§ 404.1527(d), 416.927(d))); Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) ("In light of such conflicting and internally contradictory evidence, the ALJ correctly determined that the opinions of Jones's treating physicians were not controlling."); see also Skarbek v.

23

Barnhart, 390 F.3d 500, 503 (7th Cir. 2004).  Indeed, other
courts hold that an ALJ may properly reject a treating
physician's opinion when the physician's observations are
inconsistent with a GAF assessment.  See Yoakem v. Comm'r of
Soc. Sec., 10-639, 2011 WL 5870827, at *10 (S.D. Ohio Aug. 22,
2011), report and recommendation adopted, 10-639, 2011 WL
5858960 (S.D. Ohio Nov. 22, 2011); Thao v. Astrue, 08-0033, 2008
WL 2937425, at *6 (E.D. Wis. July 24, 2008).  Therefore, given
the internal inconsistency in Dr. Lychak's March 22, 2010,
opinion, ALJ Yatron properly concluded that Dr. Lychak's March
22, 2010, opinion should receive little weight.  On remand, the
ALJ does not have to reevaluate the weight given to Dr. Lychak's
March 22, 2010, opinion.[10]


V.   **CONCLUSION**

          For the reasons set forth above, the Court approves
and adopts Chief Magistrate Judge Carol Sandra Moore Wells's
Report and Recommendation in part and rejects it in part.
Plaintiff's request for review is granted in part, denied in
part, and the Court remands this case to the Commissioner for

_____

[10]          However, the ALJ would do well to more clearly
articulate his reasons for discounting Dr. Lychak's March
22, 2010, opinion, in accordance with 20 C.F.R. §
416.927(c)(1)-(6).  See supra note 7.

further proceedings consistent with this Memorandum Opinion.  In particular, on remand the ALJ shall pose a complete and accurate hypothetical to the VE providing specific detail about Plaintiff's moderate social function impairment.  In order to fully develop the record, the ALJ shall also obtain legible treatment notes from Dr. Lychak and determine based upon those notes the appropriate weight to give to Dr. Lychak's December 9, 2009, opinion.  In doing so, the ALJ should provide a full explanation in accordance with 20 C.F.R. §§ 416.927(c)(1)-(6).  In addition, if after reviewing the legible notes the ALJ finds Dr. Lychak's December 9, 2009, opinion is consistent with the other medical evidence of record, the ALJ should consider obtaining a new opinion from the state agency's physician, or explain why such an opinion is not necessary.  An appropriate order will follow.